IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| HELENA LABORATORIES CORP., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | Civil Action No. 1:06-CV-16 |
| v. | § | |
| | § | |
| ALPHA SCIENTIFIC CORP. | § | JUDGE RON CLARK |
| | § | |
| *Defendant.* | § | |
| | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER CONSTRUING CLAIM TERMS OF UNITED STATES PATENT NO. 5,344,666

Defendant Alpha Scientific Corp. ("Alpha") is the owner of United States Patent No. 5,344,666 ("the ' 666 patent"). Plaintiff Helena Laboratories Corp. ("Helena") makes and sells liquid dispensers throughout the United States. The present action was brought by Helena under the Declaratory Judgment Acts, 28 U.S.C. § 2201 *et seq.* in response to a letter from Alpha's counsel stating that Helena's products infringe the ` 666 patent and demanding that such infringement cease. The court conducted a *Markman* hearing to assist the court in interpreting the meaning of the claim terms in dispute. Having carefully considered the patent, the prosecution history, the parties' briefs, and the arguments of counsel, the court now makes the following findings and construes the disputed claim terms as follows.

### I. Claim Construction Standard of Review

Claim construction is a matter of law. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S. Ct. 1384 (1996) ("*Markman II*"). "The duty of the trial judge is to determine the

meaning of the claims at issue, and to instruct the jury accordingly." *Exxon Chem. Patents, Inc. v. Lubrizoil Corp.*, 64 F.3d 1553, 1555 (Fed. Cir. 1995) (citations omitted).

"'[T]he claims of the patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (citation omitted). "Because the patentee is required to 'define precisely what his invention is,' it is 'unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms.'" *Phillips*, 415 F.3d at 1312 (quoting *White v. Dunbar*, 119 U.S. 47, 52 (1886)).

The words of a claim are generally given their ordinary and customary meaning. *Phillips* 415 F.3d at 1312. The "ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention."[1] *Id.* at 1313. Analyzing "how a person of ordinary skill in the art understands a claim term" is the starting point of a proper claim construction. *Id.*

A "person of ordinary skill in the art is deemed to read the claim term not only in context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313. Where a claim term has a particular meaning in the field of art, the court must examine those sources available to the public to show what a person skilled in the art would have understood disputed claim language to mean. *Id.* at 1414. Those sources "include 'words of the claims themselves, the remainder of the

---

[1]Based on the patent and the representations of the parties at the hearing, the court finds that in this case a person of ordinary skill in the art would have a bachelor's degree in mechanical engineering and some experience in the field of laboratory fluid collection and dispensing.

specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.'" *Id.* (citation omitted).

"[T]he ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. In these instances, a general purpose dictionary may be helpful. *Id.*

However, the Court emphasized the importance of the specification. "[T]he specification 'is always highly relevant to the claim construction analysis. Usually it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Phillips*, 415 F.3d at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). A court is authorized to review extrinsic evidence, such as dictionaries, inventor testimony, and learned treaties. *Phillips*, 415 F.3d at 1317. But their use should be limited to edification purposes. *Id.* at 1319.

The intrinsic evidence, that is, the patent specification, and, if in evidence, the prosecution history, may clarify whether the patentee clearly intended a meaning different from the ordinary meaning, or clearly disavowed the ordinary meaning in favor of some special meaning. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979-80 (Fed. Cir. 1995). Claim terms take on their ordinary and accustomed meanings unless the patentee demonstrated "clear intent" to deviate from the ordinary and accustomed meaning of a claim term by redefining the term in the patent specification. *Johnson Worldwide Assoc., Inc. v. Zebco Corp.*, 175 F.3d 985, 990 (Fed. Cir. 1999).

The "'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Phillips*, 415 F.3d at 1321. However, the patentee may deviate from

the plain and ordinary meaning by characterizing the invention in the prosecution history using words or expressions of manifest exclusion or restriction, representing a "clear disavowal" of claim scope.  *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002).  It is clear that if the patentee clearly intended to be its own lexicographer, the "inventor's lexicography governs."  *Phillips*, 415 F.3d at 1316.

## II. Claim Construction - The ' 666 patent

Marshall S. Levine is the inventor of United States Patent No. 5,344,666.  He assigned the patent to Alpha. The ' 666  patent involves a device which is used to dispense fluid from a container  (commonly a test tube).  The container is closed with a stopper of rubber or other resilient material which can be pierced.    The device is pushed or inserted through the stopper so that one end of the device is inside the stoppered container while the dispensing end remains outside the container.   The stoppered container is turned upside down so that the dispensing end is below the container. Then the device is placed against a target surface (commonly a microscope slide) and pressure is applied to the other end of the container.   This causes the device to compress the stopper, which reduces the volume of the container  and forces a drop of fluid to flow from the container  onto the target surface.

The only term in dispute is "stabilizing supports,"  which  appears in three independent claims (Claims 1, 24, and 41) and in eleven dependent claims (Claims  12, 17-19,  34, 38, 46, 49, 50, and 51.)  The independent claims are set out below with the disputed terms in bold.

1.      A device for dispensing an amount of fluid from a stoppered container to a target surface, comprising:

a dispenser body having a passageway formed therein, one end of said dispenser body including a surface for engaging said stoppered container and another end of said dispenser body including **stabilizing supports** for engaging said target surface, and said passageway including means for passing through said stoppered container to interior portions of said stoppered container, for accessing the fluid in said stoppered container

4

and for dispensing said fluid from said passageway and to said target surface responsive to forces applied relative to said dispenser body.

24.     A device for dispensing an amount of fluid from a stoppered container, in combination with a stoppered container and a target surface in operative association with said dispensing device, wherein said dispensing device includes a dispenser body having a passageway formed therein, one end of said dispenser body including a surface in contact with said stoppered container and another end of said dispenser body including **stabilizing supports** in contact with said target surface, and wherein said passageway includes means for passing through said stoppered container to interior portions of said stoppered container, for accessing the fluid in said stoppered container and for dispensing said fluid from said passageway, to said target surface, responsive to forces applied to said stoppered container and developed between said dispensing device and said target surface.

41.     A method for dispensing an amount of fluid from a stoppered container to a target surface utilizing a dispensing device including a body having a passageway for communicating fluid through said dispensing device, a surface for engaging said stoppered container and **stabilizing supports** for engaging said target surface, an entry tip in communication with said passageway and extending from the surface for engaging said stoppered container, and a dispensing tip formed in said passageway, said method comprising the steps of:

introducing said entry tip into said stoppered container and bringing said engaging surface into contact with said stoppered container;

placing said stoppered container and said dispensing device on said target surface so that said dispensing device is in contact with and is positioned over said target surface;

applying a force against said stoppered container, relative to said target surface, compressing said stoppered container relative to said dispensing device; and

releasing said force applied against said stoppered container, dispensing said amount of fluid from said dispensing tip and to said target surface.

Helena proposes to define "stabilizing supports" as follows:

> At least two elements, neither of which is part of the dispensing tip, and expressly excluding the dispensing tip, with the physical elements simultaneously contacting the target during fluid dispensing and which, independent of manual assistance, bear the weight of the device plus the stoppered container in a manner which is resistant to change and which maintain the dispensing tip a distance above and not in contact with the target during fluid dispensing.

Alpha suggests:

> A solid member or portion thereof extending from or constituting a part of the dispenser body, located at an end of a dispenser body other than the end that includes a surface for engaging a stoppered container, that provides a point of contact at which the dispenser body can engage with a target surface when liquid is dispensed from the stoppered container.

Claims Require More Than One Stabilizing Support

The parties agree that the term  "stabilizing supports" must include at least two elements. Helena points to the fact that throughout the patent,  the term used is the plural form,  "stabilizing support**s**" (emphasis added).  The same is true of all references in the prosecution history.  The invention is a "dispenser" identified as item **20** in the figures.  The "stabilizing supports" portion is labeled as item **26** in figure 2.  All of the figures  show a dispenser with the "stabilizing supports"

portion (whether actually labeled "**26**" or not) having two or more surfaces that engage the target. All references in the specification to item **26** use the plural form, "stabilizing supports."

While Alpha's proposed definition is in the singular - "stabilizing support," Alpha admits that "the dispenser of the claimed invention includes at least two such stabilizing supports as defined above (in Alpha's proposed definition)." Alpha's Opening Claim Construction Brief [Doc. # 35, p. 13], statements by Alpha's counsel at Markman hearing.

However, the term does not require more than two elements or points of contact which can engage the target. Claim 12 describes a dispenser "wherein said stabilizing supports define a plane spaced from said dispensing tip by a defined gap." An engineer would know that three points define a plane. Since this limitation is in a dependent claim, it implies that the same limitation is not included in the independent claim, Claim 1.

Stabilizing Supports Must Touch Target Surface

The stabilizing supports are designed to come into contact with the target surface. Claims 1 and 41 use the language "stabilizing supports for engaging said target surface." Claim 24 states: "stabilizing supports in contact with said target surface." The parties agreed at the Markman hearing that both terms mean that the stabilizing supports must touch the target surface.

In case there was any doubt, every description in the specification has the supports touching the target surface. And, in a response to a rejection of all claims by the Examiner, the patentee distinguished an earlier patent for dispensing carpet adhesive, (U.S. Patent No. 3,589,820 - Ward) by noting that in Ward the supporting structure did not come into contact with the surface on which the adhesive was placed. Amendment by Patentee, December 7, 1993, pp. 4-5, Bates stamped A00086-87**,** Exhibit 3 part 4 of Helena's Opening Claim Construction Brief, [Doc. #32, Attachment

#9, p. 11-12]. This is a clear attempt by the patentee to differentiate the present invention from prior art in which the support does not touch the target surface.

Alpha now insists that no more than one stabilizing support need to touch the target surface at any one time.  This argument, which is opposed by Helena,  is without support in the specification or  prosecution history, and directly contradicts statements made to the patent examiner after all claims were rejected.  The patentee had the power to choose the words of the patent, and nowhere modified  "stabilizing supports for engaging said target surface" as used in Claims 1 and 41 with a phrase such as "only one of which need to actually touch said target."  Likewise, the patentee never attempted to expand  "stabilizing supports in contact with said target surface" as used in Claim 21, with a phrase such as "although only one support has to really be in contact with the target."

While this issue may be important in a later argument about equivalents, it is not crucial to the court's claim construction.  The term "supports" can be construed without describing how many touch the target surface at any one time.

The Stabilizing Supports Transfer Pressure to the Stopper So Fluid is Dispensed

The inventor chose not to define "stabilizing supports" in the patent.   Claim 21 states that the supports must  be "in contact with said target surface."  Claims 1 and 41 state that the supports are "for engaging the target surface."  However we must look to the rest of the patent to determine what the stabilizing supports are or do.   The Abstract concisely states their function: "The supports also transmit reactive force from the target surface to compress the rubber stopper of the closed specimen tube."  This is apparent from figures 1,2, 4, & 5, and is described in detail at Col. 4, L. 9-55.  In other words, as the user pushes  the stoppered container, to which the invention is attached, against the target surface, the stabilizing supports transfer the force of the resistance from the target

(or more precisely the supporting surface underneath the target) against the flexible rubber stopper so that it distends into the container, thus reducing the volume of the container.

The Dispensing End is Not a Stabilizing Support

Helena  argues  that the opening of the passage way out of which fluid is dispensed (the dispensing tip"[2]) can not be one of the supports.  Claims 1 and 41 state the  the stabilizing supports are "for engaging" the "target surface."  Claim 1, Col. 5, L. 60-61; Claim 41, Col 8, L. 8.  Claim 24 describes "stabilizing supports in contact with said target surface."  The "target surface" is the object on which the fluid is to be deposited,  such as a microscope slide. This is described in the specification, and shown in the diagrams.  Col. 4, L. 46-52;  Col. 5, L. 4-12; Fig. 4; Fig. 5.

While Claim 17 describes an adjustable gap Col. 6, L. 48-51, there is no description of an embodiment in the patent or the prosecution history,  which has the dispensing end coming into contact with the target surface.  The specification describe numerous problems if the dispensing end comes into  contact with the target surface.  A seal may be formed against the target surface, which would prevent fluid from exiting or would damage cells due to the pressure."  Col. 1, L. 47-5. Contact between the dispensing end and the target could also result in  fluid being sucked back into the device.  Col. 1, L. 50-54.  Contamination can occur if the dispensed fluid comes in contact with a stabilizing support.  See Col. 2, L. 39-44.

_____

[2]Alpha objected to describing the end of the passageway out of which fluid is dispensed as the "dispensing tip," even though it was consistently so described in the specification. Therefore,   unless otherwise noted, "dispensing end" shall be used herein to refer that end of the "passageway" described in Claims 1, 24, and 41, out of which fluid is dispensed.

Nevertheless, at the  Markman hearing Alpha argued that Claim 1 could be read to   include a  dispensing end which might touch the target surface, if that surface was a blotting material, gauze, or other soft absorbent material.   Alpha does not explain why the court should ignore the numerous and consistent references in the specification and prosecution history to the stabilizing supports extending a "predetermined distance" beyond the dispensing end, which determines the amount of fluid released.   Instead Alpha  relies solely upon the canon of construction that claim language should be interpreted  broadly, and that limitations in the specification should not be imported into the claim language.

Regardless of the requirement to give the claim language a broad reading, and to avoid importing limitations,  the specification makes clear that the dispensing end does not engage  the target surface to provide the  reactive force that compresses the stopper, like a support does.  If it did, it would block the flow of fluid from the passageway (especially if soft blotter material or gauze was forced up into the passageway), and possibly contaminate the specimen or crush cells in the specimen.

 By the end of the hearing Alpha agreed that the stabilizing supports had to prevent the dispensing  end from being  pressed or forced into the target surface so as to block the opening or  drive surface material or fluid back into the opening or passageway.  Therefore, while a very broad reading of the claim language might allow the dispensing end to touch the target surface, the dispensing end can not be a stabilizing support, which, the parties agree,  transmits reactive force to the stopper.

10

The Stabilizing Supports Help  Keep The Dispensing End In Position on the Target

Helena argues that the definition of the term should state that "independent of manual assistance,"  the stabilizing supports "bear the weight of the device plus the stoppered container in a manner which is resistant to change."  This is an overly complicated limitation which is likely to lead the jury to believe that the invention must be able to stand erect on its own, "without manual assistance."  Nothing in the patent or patent history indicate that device must be able to bear weight without manual assistance.  In fact it is very unlikely that a device of about the same diameter of a long narrow test tube is going to stand up or "bear weight" without manual assistance, except in the most carefully controlled conditions.  It is even more unlikely that one skilled in the art would read "stabilizing supports" to mean  that the device is designed to encourage technicians to leave a glass tube of biologically hazardous fluid standing on its end, outside of a rack or holder,  supported only by a dispenser of about the same diameter as the tube.

One skilled in the art would realize that when the container is not safely in its rack or holder, it will be in the hand of a user.   It will not be standing on end waiting for the slightest breath of air to knock it to the floor, thus releasing infectious fluids.   The dispenser does not have to support or "bear the weight" of the device or the container.

As discussed above the stabilizing supports  have to be stiff enough, and strong enough,  to keep the dispensing tip from being forced into  the target surface when the user is pushing on the "stoppered container."  Additionally the specification describes the need for the device to "stabilize itself against a target surface" if "off-perpendicular forces are applied" to prevent the dispensing end from wandering from the location where the liquid is to be applied.  Col. 1, L. 54-58.  See also Col.

11

2, L. 44-47, which describes "stabilizing supports which are adequately spaced apart to also stabilize **against** the target surface **if force is applied** at a non-perpendicular angle. " Col. 2, L. 44-47 (emphasis added).

As  Alpha agreed at the Markman,  the stabilizing supports tend to keep the dispensing end in the same  position relative to the target surface each time pressure is applied and a drop of fluid is dispensed.  This is true  even if the direction of force applied to the container by the  user is not exactly in line with the stoppered container or the dispensing tip.   In other words, if a user happens to push on the container at an angle, the device will not simply lay down or lean over, but will tend to remain on same line relative to the target surface,  which will tend to keep the dispensing end in the same position  relative to the target.   This comports with the common definition of "stabilize" - to  make    stable,  steadfast,  or  firm,  to  hold  steady. THE MERRIAM-WEBSTER THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED (2005).

Therefore the court will define this terms as follows:

**"Stabilizing supports"** means: two or more parts or projecting surfaces at the end of the dispenser from which fluid is dispensed, other than the end of the passageway out of which fluid is dispensed, which:  make contact with the target surface;   keep said passageway opening from being forced into the target surface; tend to keep the end of the passageway out of which fluid is dispensed in the same position relative to the target surface;  and  which transfer back to the stopper, the force  applied by the user on the container and/or dispenser  for the purpose of dispensing fluid.

12

## IV.  Conclusion

The jury shall be instructed in accordance with the court's interpretation of the disputed claim term in the ' 666 patent.

So **ORDERED** and **SIGNED** this **21** day of **November, 2006.**

_____
Ron Clark, United States District Judge